NORTHERN DISTRICT OF TEXAS
FILED

OCT 31 2013

CLERK, U.S. DISTRICT COURT
By_____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,          §
                                   §
          Plaintiff,               §
                                   §
VS.                                §   NO. 4:13-CV-066-A
                                   §
JOYCE M. SIMMONS, ET AL.,          §
                                   §
          Defendants.              §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion filed by plaintiff, United States of America, on
September 23, 2013, to lift stay and to appoint pro bono attorney
for D.M. Simmons-James.  For the reasons stated in the court's
September 4, 2013 order, which are supplemented by this
memorandum opinion and order, the court is denying plaintiff's
motion.

I.

Nature of the Litigation

This is an action by plaintiff against defendants (1) Joyce
Simmons ("Joyce"), a convicted felon who is now serving a term of
imprisonment; (2) Eugene Simmons ("Eugene"), who plaintiff
alleged is Joyce's step-brother; (3) D.M. Simmons-James ("D.M."),
who plaintiff alleged is Joyce's minor child; (4) Kerry Lynn

James ("Kerry"), who plaintiff alleged is D.M.'s natural father; and (5) Wells Fargo Bank, N.A. ("Wells Fargo").

As alleged by plaintiff, the background facts are as follows: Joyce was ordered as part of her sentence to pay criminal restitution in the amount of $28,261,295.08 to Internal Revenue Service, thus causing an Internal Revenue Service tax-type lien against Joyce's property and rights to property. Plaintiff recorded a notice of lien in the real property records of Tarrant County, Texas on October 30, 2009, thus perfecting her lien against Joyce's property and rights to property.

Plaintiff seeks foreclosure of her lien against several parcels of real estate situated in Fort Worth, Texas, described in the complaint as properties at 2800 Miller Avenue; Avenue J; 4135-4137 Avenue M; 1812 Miller Avenue; and 2200 Miller Avenue. Information contained in an appendix to the complaint indicates that two of the properties contain strip shopping centers and that one of them has a value in the $800,000.00 to $1,000,000.00 range.

Plaintiff alleged that Joyce transferred title to all of the properties by deeds naming Eugene and D.M. as grantees, that all of the transfers of title to Eugene and D.M. were made with the

intent to hinder, delay, and/or defraud plaintiff, and that all of the transfers are void.[1]

According to plaintiff, "Eugene and Kerry, as parents of D.M., sold the 2200 Miller Avenue property to IBR Investments, Inc. for $100,000.00," Compl. at 8, ¶ 20, and, accordingly, she is entitled to a money judgment against Eugene and D.M. in the amount of $100,000.00, representing what they received in the sale of that property.

Plaintiff alleged that Wells Fargo has a lien on the 2800 Miller Avenue property and that taxing authorities have lien rights, or potential lien rights, against the properties.

In her prayer for relief, plaintiff requested (a) an order voiding all of the property transfers from Joyce to Eugene and D.M., (b) that plaintiff's judgment lien be declared liens on all of those properties, (c) an order declaring Joyce to be owner of the entirety of all of the properties; (d) an order declaring that plaintiff's criminal restitution lien attached to and encumbered the entirety of each property, (e) an order foreclosing plaintiff's liens on all of the properties, ruling

---

[1]Plaintiff alleged in paragraph 18 of the complaint that the property at 2200 Miller Avenue was purchased in the name of D.M., and that sometime thereafter Joyce recorded a warranty deed purporting to convey the property from her to Eugene and D.M. Thus, the appearance is that setting aside Joyce's conveyance to Eugene and D.M. as to that property would not have any effect on the ownership interest acquired by D.M. in the property through the first conveyance that named D.M. as the grantee. The court does not find any request in the complaint that there be any adjudication adversely affecting the ownership acquired by D.M. through the first deed.

them all sold free and clear of all liens, claims, and encumbrances, and (f) that the proceeds of the foreclosure sales of the properties be distributed in the following order: (i) payment of costs and expenses incurred in connection with the sales; (ii) payment of any outstanding property taxes, special collections and/or other amounts due the City of Fort Worth, Tarrant Central Appraisal District and/or other taxing authority; (iii) payment of lien holders with first/in/time/and/right interest superior to plaintiff's criminal restitution judgment lien; (iv) payment to plaintiff in partial satisfaction of Joyce's outstanding restitution debt; and (v) payment of the remainder, if any, to Joyce.[2]

II.

### Events Affecting the Minor Plaintiff, D.M., After the Complaint was Filed

The post-filing events (or non-events in the case of the 1st and 6th listed items) affecting the minor defendant are set forth chronologically below:

1. The court cannot locate anything in the court papers to indicate that there was service of process on D.M. Plaintiff filed a document on March 28, 2013, in the form of

---

[2]Plaintiff's complaint seems to fail to take into account the law of Texas that if a fraudulent conveyance of real property is established, as between the grantor and grantee the grantor no longer has any right in or claim to the fraudulently conveyed property. See Stevens v. Cobern, 213 S.W. 925, 926 (Tex. 1919); 17 Tex. Jur. 3d Creditors' Rights and Remedies, § 635, at 554-55 (2007).

an appendix to plaintiff's proof of service, indicating that Kerry was served with process on February 13, 2013. No mention was made of D.M. in that process.

2. On March 14, 2013, a document titled "Defendant's Answer" was filed over the signature of Kerry that purported to be a filing by "Kerry Lynn James, as natural parent of D.M. Simmons-James." The document was not in the form contemplated by the Federal Rules of Civil Procedure. Rather, it was a simple general denial customarily used in Texas state courts.

3. On May 2, 2013, the court issued an order noting inadequacies in the document filed by Kerry on March 14, and directing D.M. to file by May 13, 2013, an answer that complied with the requirements of the Federal Rules of Civil Procedure and the Local Civil Rules of this court.

4. On May 13, 2013, a document that recited that it was an amended original answer being filed by D.M. was filed over the signature of "Kerry James, Next Friend."

5. On May 14, 2013, the court issued an order noting inadequacies in the answer purportedly filed on behalf of D.M. on May 13. The order unfiled and struck from the record the May 13 answer, and directed that by May 21, 2013, D.M. file an amended answer in compliance with the Federal

Rules of Civil Procedure and Local Civil Rules of this
court.

6.   No answer or other responsive pleading was ever
filed by or on behalf of D.M. other than the March 14, 2013
filing mentioned in paragraph 2 and the May 13, 2013 filing
mentioned in paragraph 4.

7.   On August 6, 2013, the court issued an order
summarizing concerns the court had in reference to certain
matters pertaining to this action.   The court expressed
concern as to whether legally effective service of process
had been accomplished by plaintiff on D.M., and noted that
if D.M. had been served with process, the court would be
required to appoint a guardian ad litem for her, as
contemplated by Rule 17(c)(2) of the Federal Rules of Civil
Procedure, before the court could proceed further against
her.[3]   Plaintiff was directed by August 20, 2013, to file
proof that legally effective service of process had been
accomplished on D.M., or, if she failed to do so, to file a
document giving a satisfactory explanation why she was
unable to do so, and further ordered plaintiff to file a
document by August 20 discussing whether the court should

---

[3]In the August 6, 2013 order and at least one other order the court incorrectly referred to D.M. by
use of the pronoun "him."

appoint a guardian <u>ad litem</u> to represent the interests of
D.M. in this action.

8.   On August 8, 2013, plaintiff filed a motion for
default judgment against D.M. and Kerry.  The default relief
sought was described in the document as follows:

> United States requests that this Court
> enter a final default judgment against D.M.
> Simmons-James, a minor, and Kerry Lynn James,
> as parent of D.M.:  (1) declaring the
> transfers of 2800 Miller Avenue, Fort Worth,
> Texas, 1812 Miller Avenue, Fort Worth, Texas,
> Avenue J, Fort Worth, Texas, 4135 - 4137
> Avenue M, Fort Worth, Texas, and 1812 Miller
> Avenue, Fort Worth, Texas from Joyce Simmons
> to D.M. Simmons-James void as fraudulent; and
> (2) entering a money judgment against D.M. in
> the amount of $44,877.97 plus interest
> calculated in accordance with 28 U.S.C.
> § 1961(a), which represents D.M.'s one-half
> share of the proceeds that Kerry, as parent
> of D.M., received from the sale of 2200
> Miller Avenue, Fort Worth, Texas.

Mot. for Default J. at 5.

9.   On August 12, 2013, the court issued an order
denying plaintiff's motion for default judgment against D.M.
and Kerry.  The court advised that it had reconsidered its
May 14, 2013 order unfiling and striking the item filed on
May 13, 2013, over the signature of Kerry as an answer for
D.M.  The court ordered such item to be reinstated on the
record of this action as an answer to the complaint filed by
D.M., acting through Kerry as her next friend.

10.   On August 20, 2013, the court issued an order
making known the court's conclusion that a guardian ad litem
should be appointed for D.M. and that if the action were to
proceed against D.M., such an appointment would have to be
made.   The court noted its anticipation that significant
time would be devoted by a guardian ad litem to the
representation of D.M., and expressed hesitation to appoint
an attorney to provide those services until the court had an
understanding as to how plaintiff would anticipate that such
an attorney would be compensated.   The court ordered
plaintiff to file by August 26, 2013, a document providing
the court her views on the source of funding from which such
compensation and reimbursement could be made and any
guidelines plaintiff would consider to be appropriate in
determining the rate of compensation and the limit, if any,
on expenses or reimbursements that would be allowed.

11.   Plaintiff responded on August 23, 2013, by a
document that first addressed the matter of compensation of
a guardian ad litem, noting that rates and limitations under
the Criminal Justice Act, 18 U.S.C. § 30306A, and the Equal
Access to Justice Act, 28 U.S.C. § 2412(d), provide
appropriate guidance for compensation.   As to the second
issue (who would compensate a guardian ad litem), plaintiff

8

first suggested that the court has the authority to tax guardian _ad litem_ fees as costs against non-prevailing parties, noting that "[i]f the United States prevails in this case, D.M. loses the subject property, and she likely has no other assets from which to pay the costs of a guardian _ad litem_ taxed against her as the non-prevailing party," Resp. at 5-6, and further noting that "[i]f she prevails, she keeps the subject property, from which her guardian _ad litem_ may be paid, e.g., through the collection of rental payments or sale of some of the property," _id._ at 6. Another suggestion offered by plaintiff was that the court could appoint an attorney to serve as guardian _ad litem_ on a _pro bono_ (uncompensated) basis, noting that this court has a plan for making payment to a _pro bono_ attorney appointed by the court of a nominal amount out of judiciary funds in certain instances, and has provision for reimbursement up to a certain limit for certain kinds of expenses incurred by a _pro bono_ attorney in providing court-ordered representation. Plaintiff concluded her response by conveying to the court the message that plaintiff cannot be made to pay, and would not plan to pay, any part of a fee for services rendered by a guardian _ad litem_.

12.   To the end of exploring the adequacy of Kerry to
act on behalf of D.M. in this litigation, the court issued
an order on August 26, 2013, requiring Kerry to appear
before the court on September 4, 2013, for a hearing "on the
subject of whether he is qualified to serve as next friend
for D.M. . . . and whether service by [him] as next friend
for D.M. . . . would provide sufficient legal representation
to D.M. considering the claims that are being made against
D.M. by United States of America in this action."  Aug. 26,
2013 Order at 1-2.

13.   Kerry appeared September 4, 2013, and was
questioned by the court.  His answers clearly established
that he was woefully inadequate to act on behalf of D.M.,
who is his fifteen-year-old daughter.  The court concluded
that for D.M. to be afforded adequate representation in this
action, the court would be required to appoint an attorney
as guardian ad litem for her.  At the hearing, the court
informed counsel for plaintiff that plaintiff would be
required to make arrangements for compensation of a guardian
ad litem if one were to be appointed.

14. The court reminded plaintiff's counsel of that

requirement in an order the court issued September 4, 2013,

in which it stated the following on that subject:

> As the court made known to counsel at the hearing, the court is not inclined to appoint a guardian <u>ad litem</u> for D.M. unless the court has an assurance that the guardian <u>ad litem</u> will be appropriately compensated for services rendered and expenses incurred in that capacity. That appointment of a guardian <u>ad litem</u> for D.M. would, in a sense, be to facilitate plaintiff's pursuit of its claims against D.M. The court would expect plaintiff to commit to make payment of such guardian <u>ad litem</u>'s fees and expenses in the performance of his or her duties in that capacity, assuming that the fees and expenses are reasonable in amount. Such a commitment by plaintiff would not prevent plaintiff from seeking an order requiring a defendant other than D.M. to reimburse plaintiff for all or some part of whatever payment it might make for fees and expenses of a guardian <u>ad litem</u>.

<u>Id.</u> The court stayed pursuit of any claim in this

action that could affect the interests of D.M. until

the court received satisfactory assurance from

plaintiff that a guardian <u>ad litem</u> appointed by the

court for D.M. would be adequately compensated for

services rendered and expenses incurred in that

capacity.[4]

---

[4]At the September 4 hearing, counsel for plaintiff indicated that there were plans for a meeting to discuss a possible agreed resolution of plaintiff's claims. The court noted during the hearing and in the September 4 order that the court did not intend to prevent such a meeting, but made known that if tentative agreement were to be reached at the meeting that affected the interests of D.M., the court would not be inclined to take action based on such an agreement without first appointing an attorney to serve as guardian <u>ad litem</u> for D.M. in the evaluation of the merits of such an agreement and for a report to the

(continued...)

15. Next came the motion to lift stay and appoint pro bono attorney for D.M. that is now before the court for consideration and decision. Its content will be discussed in the next section of this memorandum opinion and order.

## III.

## Analysis

A. The Court's Obligations to the Minor Defendant

Rule 17(c)(2) of the Federal Rules of Civil Procedure directs that "[t]he court <u>must</u> appoint a guardian ad litem--or issue another appropriate order--to protect a minor--who is unrepresented in an action." (emphasis added). Rule 17(c)(2) confirms the longstanding principle that the court owes to a minor (often referred in the cases as an infant) the duty to protect his or her interests. In 1835, the Supreme Court in <u>Coulson v. Walton</u> said that "[i]t is the duty of the court to protect the interests of minors." 34 U.S. 62, 84, 9 pet. 62 (1835). That principle repeatedly has been expressed over the years. <u>See In Re Moore</u>, 209 U.S. 490, 497 (1908) (saying that "[t]he court, whose duty is to protect the interests of the

---

[4](...continued)
court as to whether, in the opinion of the guardian <u>ad litem</u>, such an agreement would be appropriate from D.M.'s standpoint.

infant, should see to it that they are not bargained away by those assuming . . . to represent him"); Johnson v. Ford Motor Co., 707 F.2d 189, 194 (5th Cir. 1983); Chrissy F. v. Miss. Dept. of Pub. Welfare, 883 F.2d 25, 27 (5th Cir. 1989). In duPont v. Southern Nat'l Bank of Houston, Tex., 771 F.2d 874, 882 (5th Cir. 1985) (quoting from Richards v. Tyson, 86 N.W. 250, 251 (Wis. 1901)), the Fifth Circuit said: "[t]he infant is always the ward of every court wherein his rights of property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." Non-appointment of a guardian ad litem when appropriate constitutes "a failure to exercise a legally required discretion." United States v. 30.64 Acres of Land, 795 F.2d 796, 805 (9th Cir. 1986).

The court on its own motion should determine whether a minor's interests are adequately protected. Chrissy F., 883 F.2d at 27. In Chrissy F., the Fifth Circuit held that "the district court must either appoint a guardian ad litem or next friend who qualifies under (applicable) law or enter a finding that [the minor's] interests are adequately protected without such an appointment." Id. The Fifth Circuit concluded its Chrissy F. opinion with the admonition that "[t]he district court's primary concern . . . should be to assure that [the minor's] interests in

vindicating her statutory and constitutional rights are properly
protected." Id.

B.   The Duties of a Guardian Ad Litem

The Fifth Circuit discussed by way of dicta in duPont the
different roles that can be played by a guardian ad litem, on the
one hand, and an attorney ad litem, on the other.  771 F.2d at
882.  The practice seems to be clearly established that "[a]
guardian ad litem is authorized to act on behalf of his ward and
may make all appropriate decisions in the course of specific
litigation." 30.64 Acres of Land, 795 F.2d at 805.  The language
of Rule 17(c)(2) contemplates that the guardian ad litem will
provide broad representation to the minor by assigning to the
court-appointed guardian ad litem the duty "to protect the minor
. . . who is unrepresented in an action."  As the Fifth Circuit
noted in duPont, a guardian ad litem not only has a role in
advising the party for whom he or she was appointed, the guardian
ad litem also has a role in advising the court relative to the
interests of the minor.  771 F.2d at 882.

Presumably the court can and will define the duties it
expects the guardian ad litem to perform.  In the instant action,
the court would expect a guardian ad litem appointed for D.M. to
provide competent and conscientious legal representation to D.M.
in defense of the claims being made against her by plaintiff in

14

this action, and to advise the court relative to the wisdom of any settlements that are proposed affecting the interests of D.M.

C.    <u>Some of the Issues that Would Face the Guardian Ad Litem
      Appointed for D.M.</u>

A guardian <u>ad litem</u> appointed for D.M. in this action would have to consider at the outset whether D.M. is properly before the court, and to file whatever motion or motions might be appropriate on that subject.  The court overlooked non-service of process on D.M. by accepting as an appearance by D.M. the answer filed by Kerry purporting to act as next friend for D.M.  Whether the court made the correct decision could be subject to debate.

Among the sub-issues the guardian <u>ad litem</u> would be required to research would be whether an answer filed on behalf of D.M. by non-attorney Kerry has any legal effect, bearing in mind that a non-attorney parent does not have standing to represent his or her child in an action brought in federal court.  <u>See</u> <u>Wenger v. Canastota Cent. Sch. Dist.</u>, 146 F.3d 123, 124-25 (2nd Cir. 1998); <u>Devine v. Indian River Cnty. Sch. Bd.</u>, 121 F.3d 576, 581 (11th Cir. 1997); <u>Johns v. County of San Diego</u>, 114 F.3d 874, 876-77 (9th Cir. 1977); <u>Osei-Afriyie v. Medical Coll. of Pa.</u>, 937 F.2d 876, 882-83 (3rd Cir. 1991).  A related issue that would require research by the guardian <u>ad litem</u> is whether a parent can subject a minor defendant to the court's jurisdiction by the filing of an

answer for the minor defendant even though the minor defendant has never been served with summons.  The court has assumed that the parent can do so, but a cautious attorney would undoubtedly wish to look into the correctness of the court's assumption.

D.M.'s interests in the properties described in the complaint could have a value in excess of a million dollars. Legal research, and factual development through discovery, could well be required as to each of the properties in which D.M. acquired a legal interest, either directly or through Joyce.  The guardian ad litem should be an attorney who has experience in federal court practice and procedure.

A special issue is presented as to the 2200 Miller Avenue property, which was deeded to D.M. by someone other than Joyce before Joyce, then, executed and recorded a deed showing the grantees to be D.M. and Eugene.  Plaintiff's complaint indicates that 2200 Miller Avenue was sold; and, plaintiff seeks to recover from D.M. all or one-half of the funds received from the sale. The court has a concern as to whether plaintiff has pleaded facts sufficient to support any relief by plaintiff against D.M. as to the 2200 Miller Avenue property.  This is an issue that will require research.

While the court became satisfied during Joyce's criminal proceeding that she made fraudulent conveyances, the rulings and

findings in the criminal proceeding are not necessarily binding

on D.M., with the consequence that plaintiff and D.M.'s attorney

both will be starting afresh on the issue of whether D.M.'s legal

interests in the properties are subject to the claims of

plaintiff.

D.    The Arguments Made by Plaintiff in Her Motion are Not
      Persuasive

Plaintiff concedes in her motion that an attorney should be

appointed to represent the interests of D.M. in this action.

What plaintiff fails to recognize is that the appointment of an

attorney to represent D.M. primarily is for plaintiff's benefit.

Plaintiff cannot proceed in this action against D.M. unless D.M.

is properly represented.

Plaintiff seem to argue that, notwithstanding the clear cut

language of Rule 17(c)(2) (that the court "must appoint a

guardian ad litem"), the court should be guided by Texas state

law on the subject rather than the Federal Rules of Civil

Procedure.  As part of that argument, plaintiff takes the

position that the attorney to be appointed to represent D.M.

should not be considered to be a guardian ad litem but, instead,

should be considered to be an attorney ad litem.  As the court

previously has discussed, federal law clearly contemplates that

the appointment the court should make in this case would be of a

guardian _ad litem_, with duties to be defined by the court in the order of appointment.

Next, plaintiff argues that a _pro bono_ appointment of an attorney _ad litem_ is the most reasonable solution. Mot. at unnumbered 11th page - 19. The reference in that section of the motion to the possibility that an attorney from the court's _pro bono_ civil panel or Family Court Services of Tarrant County may be available to represent D.M. is wide of the point. The court would not have in mind making an appointment of an attorney for D.M. who the court is not satisfied has the qualifications properly to provide representation to D.M. in this action. Moreover, the Fort Worth Division of this court does not have a _pro bono_ civil panel. The court has no reason to believe that an attorney who might be available through the Family Court Services of Tarrant County would have the qualifications necessary for the representation of D.M. in this action.

Plaintiff devotes a section of her motion to distinguishing this action from an earlier action in which a similar problem was presented and in which United States did commit in advance to payment of the fee of a guardian _ad litem_ appointed to represent minor plaintiffs. In the other action, which was Case No. 4:05-CV-705-A on the docket of this court, the court was required to appoint guardians _ad litem_ for minor plaintiffs so that the

United States court seek forfeiture of real property in which the minors had legal interests. The court is not satisfied that there is a reason why in the instant action plaintiff cannot be as resourceful as it was in Case No. 4:05-CV-705-A in identifying funds that would be available for a commitment to pay the fees and expenses of a guardian <u>ad litem</u> appointed to represent D.M. in this action. Those fees and expenses would simply be part of the litigation expense plaintiff would be required to incur in order to pursue this litigation against D.M. Surely plaintiff is not taking the position that it does not have the resources with which to pay required litigation expenses.

The suggestion of plaintiff at page 21 of her motion that even though D.M. is not properly represented in this action, the court permit the parties to proceed with limited discovery as to the adult litigants until an attorney for D.M. is appointed is not a realistic one. Little would be gained by allowing discovery to go forward if it would not be useable as evidence against D.M.[5]

* * * * *

For the reasons stated above, the court has concluded that plaintiff's motion should be denied.

------------------------

[5]Plaintiff has not moved for, or suggested, a severance into a separate action of her claims against D.M.

19

IV.

Order

Therefore,

The court ORDERS that plaintiff's motion to lift stay and to appoint pro bono attorney for D.M. be, and is hereby, denied.

SIGNED October 31, 2013.

_____
JOHN McBRYDE
United States District Judge